# KIMMISH v. BALL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF IOWA.

No. 1254. Submitted January 2, 1889. — Decided January 28, 1889.

Section 4059 of the Code of Iowa, which provides that a person having in
his possession " Texas cattle " shall be liable for any damages which may
accrue from allowing them to run at large and thereby spread the disease
known as the " Texas fever," is not in conflict with the commerce-
clause of the Constitution of the United States; nor is it a denial to citi-
zens of other States of any rights and privileges which are accorded to
citizens of Iowa, and thus in conflict with Subdivision 1 of Section 2 of
Article 4 of the Constitution, relating to the privileges and immunities
of the citizens of the several States.

THE court stated the case as follows:

This case comes from the Circuit Court of the United States
for the Southern District of Iowa. It involves the validity of
a statute of that State, making a person having in his posses-
sion within it any Texas cattle, which have not been wintered
-north of the southern boundary of Missouri and Kansas, liable
for any damages that may accrue from allowing them to run
at large, and thereby spread the disease known as Texas fever.
The statute is found in § 4059 of the Code of Ohio, which
refers to the preceding § 4058. The two sections are as
follows:

" SEC. 4058. If any person bring into this State any Texas
cattle, he shall be fined not exceeding one thousand dollars or
imprisoned in the county jail not exceeding thirty days, unless
they have been wintered at least one winter north of the
southern boundary of the State of Missouri or Kansas: Pro-
vided, That nothing herein contained shall be construed to pre-
vent or make unlawful the transportation of such cattle
through this State on railways, or to prohibit the driving

through any part of this State, or having in possession, any Texas cattle, between the first day of November and the first day of April following.

"SEC. 4059. If any person now or hereafter has in his possession, in this State, any such Texas cattle, he shall be liable for any damages that may accrue from allowing said cattle to run at large, and thereby spreading the disease among other cattle known as the Texas fever, and shall be punished as is prescribed in the preceding section."

The action is based upon this latter section. The petition of the plaintiff alleges that in June, 1885, the defendants were the owners of and had in their possession and under their control a herd of Texas cattle, which had not been wintered north of the southern boundary of Missouri or Kansas, and which were purchased at or near Fort Smith, in Arkansas; that said cattle, while in the possession and under the control of the defendants, were allowed by them to run at large in Union Township, Harrison County, Iowa, contrary to the provisions of § 4059 of its code; and that the said cattle were infected by a disease known as "Texas cattle fever," which was spread and disseminated by them among the cattle of the plaintiff, whereby they sickened and died, to his damage of five thousand dollars, for which he prays judgment.

To this petition the defendants demurred on the grounds, first, that §§ 4058 and 4059 are in conflict with Section 8, Article 1 of the Constitution of the United States, in that the legislature of Iowa undertakes to regulate and interfere with interstate commerce; and second, that the sections are in conflict with Section 2 of Article 4 of the Constitution of the United States relative to the privileges and immunities of citizens of the several States.

The demurrer was heard at March term, 1888, of the Circuit Court, the court being held by two judges who were opposed in opinion upon the constitutionality of § 4059, on the grounds mentioned. The plaintiff electing to stand upon his petition, judgment was entered for the defendants sustaining the demurrer, according to the opinion of the presiding judge. Thereupon, on motion of the plaintiff, it was ordered that the

points of disagreement be certified to this court; and upon this certificate [1] the case has-been heard.

*Mr. I. N. Flickinger* for plaintiff in error.

*Mr. W. F. Sapp* for defendants in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

In order to understand § 4059 of the Code of Iowa, it must be read in connection with the preceding § 4058, to which it refers. It must also be known what is meant by "Texas cattle," and what influence a winter north has upon the disease called "Texas fever," with which such cattle are liable to be infected. Section 4058 is levelled against the importation of Texas cattle which have not been wintered north of the southern boundary of Missouri or Kansas. Any person bringing into the State Texas cattle, unless they have been thus wintered, is subject to be fined or imprisoned. When, therefore, § 4059 refers to the possession in the State of any "such Texas cattle" it means cattle which have not been wintered North, as mentioned in the preceding section. It is only when they have not been thus wintered that apprehension is felt that they may be infected with the disease and spread it among other cattle.

The term "Texas cattle" is not defined in the Code of Iowa; and whether used there to designate cattle from the State of Texas alone, or, as averred by the plaintiff in error, a particular breed or variety called Mexican or Spanish cattle, which are also found in Arkansas and the Indian Territory, is

---

[1] The questions certified were as follows:

1st. Is § 4059 of the Code of Iowa repugnant to and in conflict with the provisions of Sec. 8 of Article 1 of the Constitution of the United States relative to the regulation of commerce among the several States and by reason thereof unconstitutional?

2nd. Is § 4059 of the Code of Iowa repugnant to or in conflict with Sec. 2 of Article 4 of the Constitution of the United States relative to the privileges and immunities of citizens in the several States and by reason thereof unconstitutional?

not material for the disposition of this case. Cattle coming from both of those States and from that Territory during the spring and summer months are often infected with what is known as Texas fever. It is supposed that they become infected with the germs of this distemper while feeding, during those months, on the low and moist grounds of those States and Territory, constituting what are called their malarial districts, which are largely covered with a thick vegetable growth. These germs are communicated to domestic cattle by contact, or by feeding in the same range or pasture. Scientists are not agreed as to the causes of the malady; and is not important for our decision which of the many theories advanced by them is correct. That cattle coming from those sections of the country during the spring and summer months are often infected with a contagious and dangerous fever is a notorious fact; as is also the fact that cold weather, such as is usual in the winter north of the southern boundary of Missouri and Kansas, destroys the virus of the disease, and thus removes all danger of infection. It is upon these notorious facts that the legislation of Iowa for the exclusion from their limits of these cattle, unless they have passed a winter north, is based. See *Missouri Pacific Railway Company* v. *Finley*, 38 Kansas, 550, 556; also, First Annual Report to the Commissioner of Agriculture of the Bureau of Animal Industry for 1884, 426; and Second Annual Report of the same bureau for 1885, 310.

Section 4059, with which we are concerned, provides that any person who has in his possession in the State of Iowa any Texas cattle which have not been wintered north shall be liable for any damages that may accrue from allowing such cattle to run at large and thereby spread the disease. We are unable to appreciate the force of the objection that such legislation is in conflict with the paramount authority of Congress to regulate interstate commerce. We do not see that it has anything to do with that commerce; it is only levelled against allowing diseased Texas cattle held within the State to run at large. The defendants labor under the impression that the validity of § 4058, which is directed against the importation

into the State of such cattle unless they have been wintered North, is before us, and that a consideration of its validity is necessary in passing upon § 4059; but this is a mistake. Section 4058 is before us only that we may ascertain from it the meaning intended by certain terms used in the subsequent section referring to it, and not upon any question of its constitutionality.

Nor does the case of *Railroad Company* v. *Husen*, 95 U. S. 465, upon which the defendant relies with apparent confidence, have any bearing upon the questions presented. The decision in that case rested upon the ground that no discrimination was made by the law of Missouri in the transportation forbidden between sound cattle and diseased cattle; and this circumstance is prominently put forth in the opinion. "It is noticeable," said the court, "that the statute interposes a direct prohibition against the introduction into the State, of all Texas, Mexican, or Indian cattle during eight months of each year, without any distinction between such as may be diseased and such as are not." (p. 469.) It interpreted the law of Missouri as saying to all transportation companies, "You shall not bring into the State any Texas cattle or any Mexican cattle or Indian cattle between March 1st and December 1st in any year, no matter whether they are free from disease or not, no matter whether they may do an injury to the inhabitants of the State or not; and if you do bring them in, even for the purpose of carrying them through the State without unloading them, you shall be subject to extraordinary liabilities." (p. 473.) Such a statute, the court held, was not a quarantine law, nor an inspection law, but a law which interfered with interstate commerce, and therefore invalid. At the same time the court admitted unhesitatingly that a State may pass laws to prevent animals suffering from contagious or infectious diseases from entering within it. (p. 472.) No attempt was made to show that all Texas, Mexican, or Indian cattle coming from the malarial districts during the months mentioned were infected with the disease, or that such cattle were so generally infected that it would have been impossible to separate the healthy from the diseased. Had such proof been given, a different

question would have been presented for the consideration of the court. Certainly all animals thus infected may be excluded from the State by its laws until they are cured of the disease, or at least until some mode of transporting them without danger of spreading it is devised.

*Railroad Company* v. *Husen* gives no support to the contention of the defendant. There is no necessary dependence of the provisions of §§ 4059, imposing a civil liability, upon those of § 4058, so that the one may not stand without the other. If the criminal liability created by § 4058 is open to doubt, which we do not affirm, the civil liability may remain for the damages caused by the wilful conduct designated in § 4059. *Packet Company* v. *Keokuk*, 95 U. S. 80; *Allen* v. *Louisiana*, 103 U. S. 80.

The case is, therefore, reduced to this, whether the State may not provide that whoever permits diseased cattle in his possession to run at large within its limits shall be liable for any damages caused by the spread of the disease occasioned thereby; and upon that we do not entertain the slightest doubt. Our answer, therefore, to the first question upon which the judges below differed is in the negative, that the section in question is not unconstitutional by reason of any conflict with the commercial clause of the Constitution.

As to the second question, our answer is also in the negative. There is no denial of any rights and privileges to citizens of other States which are accorded to citizens of Iowa. No one can allow diseased cattle to run at large in Iowa without being held responsible for the damages caused by the spread of disease thereby; and the clause of the Constitution declaring that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States does not give non-resident citizens of Iowa any greater privileges and immunities in that State than her own citizens there enjoy. So far as liability is concerned for the act mentioned, citizens of other States and citizens of Iowa stand upon the same footing. *Paul* v. *Virginia*, 8 Wall. 168.

It follows that the judgment below must be

*Reversed, and the cause remanded for a new trial.*