## NATIONAL LABOR RELATIONS BOARD v. GREENSBORO COCA COLA BOTTLING CO.

### No. 6016.

United States Court of Appeals Fourth Circuit.

Argued Jan. 11, 1950.

Decided March 6, 1950.

---

3. Regina v. Boulter, 175 Eng.Rep. 535 (N. P.1852), aff'd., 169 Eng.Rep. 554 (Cr. App. 1852).

4. 3 Wigmore on Evidence, § 763 (3d ed. 1940).

ported by substantial evidence, although there is, also, a contention that the Board was without jurisdiction on account of alleged failure of the complaining union to comply with section 9(f) (g) and (h) of the Labor-Management Relations Act, 29 U.S.C.A. § 159(f–h), and a motion to remand for further cross examination of certain witnesses.

It is clear that the order is amply supported by the evidence. There is testimony to support the Board's finding that an employee of long service, one Hodge, was discharged because of union activities, that other employees who went on strike because of his discharge were themselves discharged, that the company refused to reinstate them when they asked for re-employment, and that it refused to bargain with the union which had been chosen by a majority of the employees in what has been found by the Board to be an appropriate bargaining unit. The Company denies that it discharged Hodge because of union activities and contends that the other employees voluntarily quit. It contends also that, being no longer employees, they were not entitled to be counted in the selection of a bargaining representative and that, without them, the union was not the choice of a majority.

There is evidence tending to show that, when in October 1947 the company proposed a change in its sales and delivery service, there was dissatisfaction among the employees and a movement, led by Hodge, to organize a union; that Parker, the company's local manager, heard of this activity and notified Carter, its president, who lived in a distant town; that, while Parker denies that he knew that Hodge was taking part in the organization of employees, he told Carter over the 'phone, when talking about the organizational activities, that things were getting hot and that one man in particular was acting as one of the old employees should not act and it looked like he might cause trouble unless fired; that Carter came at once to the plant in Greensboro and made a speech to the employees voicing the company's opposition to union organization; that immediately after his speech Hodge

Duane Beeson and Bernard Dunau, Attorneys, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, and A. Norman Somers, Assistant General Counsel, National Labor Relations Board, Washington, D. C., on brief) for petitioner.

Thomas D. Cooper, Burlington, N. C., and Frank A. Constangy, Atlanta, Ga. (L. P. McLendon and Thornton H. Brooks, Greensboro, N. C., on brief) for respondent.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board which directed the Greensboro Coca Cola Bottling Company to cease and desist from unfair labor practices, to reinstate with back pay certain employees who had been discharged and to recognize and bargain with a union as the representative of its employees. The principal contention of respondent is that the order is not sup-

was discharged with no other reason assigned than that he was dissatisfied and it was thought that he would be better satisfied elsewhere; that when Hodge inquired of Parker whether he was not discharged because he was thought to be the leader in organizing the employees, the latter denied this but asked, if he were not the leader, who was; and that, when asked later by other employees why Hodge was discharged, Parker refused to give a reason but, when paying Hodge off, said, "We can't afford to have a union around here." Although the company introduced evidence to the effect that Hodge was discharged because he was uncooperative in making the change over to the new sales and delivery service and had evidenced an attitude of insubordination towards the new sales manager of the company, the Board was not obliged to accept this testimony in the face of the circumstances above mentioned, which certainly had a tendency to prove that the real reason was the desire to be rid of the man who was attempting to organize the employees. Particularly is this so in view of the fact that Hodge had been employed by the company over a period of seventeen years and that, in attempting to justify his discharge, the company gave evidence of a number of minor matters which were not thought of sufficient importance to warrant a discharge at the time they occurred.

As we said in Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, 293: "It must be remembered, in this connection, that the question involved is a pure question of fact; that, in passing upon it, the Board may give consideration to circumstantial evidence as well as to that which is direct; that direct evidence of a purpose to violate the statute is rarely obtainable; and that where the finding of the Board is supported by circumstances from which the conclusion of discriminatory discharge may legitimately be drawn, it is binding upon the courts, as they are without power to find facts or to substitute their judgment for that of the Board."

See also N. L. R. B. v. Harris-Woodson Co., 4 Cir., 162 F.2d 97, 101; N. L. R. B. v. Piedmont Wagon & Mfg. Co., 4 Cir., 176 F.2d 695, 696; N. L. R. B. v. Dixie Shirt Co., 4 Cir., 176 F.2d 969, 973, 974. In the case last cited Judge Dobie, speaking for the Court, stated the rule tersely as follows: "It is not our duty or responsibility to weigh the evidence and pass upon conflict of opinion. It is sufficient to state our conclusion on the facts viewed against the whole background of the case that the finding of the Board is supported by substantial evidence."

With respect to the discharge of the other employees, the evidence is that on the Sunday following the discharge of Hodge, which occurred on a Saturday, a group of fellow employees met and drafted a letter which set forth that they had the same cause of "dissatisfaction" as Hodge and that they would not drive out their trucks unless he was restored to his job. They presented this to Parker next morning, whereupon Parker stated that unless they returned to work at once, he would regard this letter as a resignation. When they did not return to work, he told them that they had quit and ordered them off the premises. They then got in contact with the representative of the labor union which they were joining, who told them that they should not strike and asked Parker to put them back to work, but he refused to do so.

It is perfectly clear that, whatever view be taken of the action of these employees, it was certainly "concerted activity" for "mutual aid or protection" within the meaning of 29 U.S.C.A. § 157, and that to discharge them because of such activity was an unfair labor practice forbidden by the act. Joanna Cotton Mills v. N. L. R. B., 4 Cir., 176 F.2d 749, 752; N. L. R. B. v. Peter Cailler Kohler Swiss Chocolates, 2 Cir., 130 F.2d 503; N. L. R. B. v. Phoenix Mut. Life Ins. Co., 7 Cir., 167 F.2d 983; Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 140 F.2d 714. Stripped of sophistry, the situation presented by the record is that Hodge's fellow employees, following his discharge, went on a strike to procure his reinstatement, that the company discharged them for doing so and that, when they abandoned the strike, it refused to reinstate them. Notwithstanding

the company's contention that the employees resigned, there is ample support for the Board's finding that they were wrongfully discharged. N. L. R. B. v. Stowe Spinning Co., 4 Cir., 165 F.2d 609, 615; N. L. R. B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 56. And since the strike in which they were engaged was on account of the company's unfair labor practices and the discharge on account thereof was an unfair labor practice in itself, they were unquestionably entitled to reinstatement. Home Beneficial Life Ins. Co. v. N. L. R. B., 4 Cir., 159 F.2d 280, 285.

■ There can be no question as to the sufficiency of the evidence to support the Board's finding that the company refused to bargain. There is evidence that the union's business agent Jones asked the officials of the company to bargain with him as representative of the men, that at the time he held union cards signed by a majority of the employees in the unit and that the officials refused to bargain on the ground that those who had signed the cards were no longer employees of the company. These were the employees who had struck on account of the discharge of Hodge. It is well settled, however, that the status of the strikers as employees of the company was not forfeited because of the strike and that it was the duty of the company to deal with them. 29 U.S.C.A. § 152(3). Jeffery-DeWitt Insulator Co. v. N. L. R. B., 4 Cir., 91 F.2d 134, 137, 112 A. L.R. 948; Home Beneficial Life Ins. Co. v.

N. L. R. B., supra. And the signing of membership cards was ample proof of majority representation. N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 338-339, 60 S.Ct. 918, 84 L.Ed. 1226; Peoples Motor Express Co. v. N. L. R. B., 4 Cir., 165 F.2d 903; N. L. R. B. v. Schmidt Baking Co., 4 Cir., 122 F.2d 162, 163. Here there was no question but that the union represented a majority of the employees if those on strike were counted, and no question but that they should have been counted.

■ The company's contention that the Board was without jurisdiction to enter the order is based upon an allegation in the answer before the Board to the effect that the union upon whose petition the complaint of the Board was filed had not complied with the requirements of section 9 (f) (g) and (h) of the Labor-Management Relations Act. These provisions of the statute require that labor organizations desiring to obtain the benefits of the act shall file certain operational and financial statements with the Secretary of Labor, distribute the financial statement to their members and have their officers submit affidavits that they are not members of the Communist Party.[1] There is nothing whatever in the evidence, however, to show that the union has not complied with these statutory requirements; and, in the absence of proof to the contrary, we must assume that they have been complied with. Not only would General Counsel be dere-

1. The procedure set up by the Board for complying with these provisions of the statute is thus described in the brief of the Board in this case: "To meet the obligation imposed upon it by the statute, the Board found it necessary to establish an elaborate administrative structure for the purpose of determining prior to the issuance of a complaint or the conduct of an investigation that the moving labor organization has complied with the requirements of section 9(f), (g), and (h). See Rules and Regulations of the National Labor Relations Board, Series 5, Sections 202.3, 202.16, 202.21, 203.13, 203.65, and 203.71; 29 CFR (1947) Supp.). An Affidavit Compliance Branch was established within the Board in order to keep records, send notifications of lapses in com-

pliance, and carry on the other activities incidental to the proper exercise of the Board's statutory duties. The Compliance Branch has printed and distributed to unions a booklet called 'A Guide for Labor Organizations,' which describes the procedures and forms established by the Board and the Department of Labor for complying with the filing requirements. Proper forms are available at regional offices, and in the main the mechanics of locals' compliance are handled with the appropriate regional office. Forms published by the Board for this purpose include (1) the non-Communist affidavit, (2) a certificate of distribution of financial data, (3) a certificate of union officers, and (4) a certificate of intent to remain in compliance. The Depart-

lict in his duty were he to file a complaint on petition of a union which had failed to comply with these provisions of the statute, but the Board itself would ignore the law were it to order bargaining with such a union and has taken the position that it will not order bargaining with a union not in compliance. See N. L. R. B. v. Harris-Woodson Co., 4 Cir., 179 F.2d 720. And the Board will not hold that bargaining with a union not in compliance is required even if the union later complies. In the Matter of Andrews et al. —— N. L. R. B. —— (decided Dec. 6, 1949). Where there is nothing to show, therefore, that the union has failed to comply with the statutory provisions, where general counsel has filed a complaint upon its petition, and where the Board has granted relief upon the complaint, we must assume that the law has been complied with.[2] Omnia praesumuntur rite esse acta. United States v. Chemical Foundation, 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed. 131; Smith v. St. Louis & S. W. Ry. Co., 181 U.S. 248, 258, 21 S.Ct. 603, 45 L.Ed. 847.

The company contends that compliance with the statutory provisions is jurisdictional and that compliance must be shown before the Board has jurisdiction to proceed. There is nothing in the language of the statute expressly requiring this; and if such view were to be taken, it would greatly hamper the administration of the act, since it would be incumbent upon the general counsel to show compliance, not only with the requirements as to filing affidavits but also with those requiring the giving of notice to members; and this he would have to do in every case, even though there were no question as to compliance. Surely nothing of the sort was contemplated in the passage of the statute; and it is well settled that the courts will not construe a statute in such way as to make it administratively unworkable if any other construction is possible. Haggar v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340; Gruver v. Com'r, 4 Cir., 142 F.2d 363, 366; Fides v. Com'r, 4 Cir., 137 F.2d 731. We think it clear that the requirement of the statute goes, not to the jurisdiction of the Board, but to the standing of the union to ask relief before it. As said by Mr. Justice Holmes in Fauntleroy v. Lum, 210 U.S. 230, 235, 28 S.Ct. 641, 642, 52 L.Ed. 1039: "No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the other only to the duty, of the court. * * * Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense."

Whether the company has such an interest in compliance with these provisions of the statute as to authorize it to raise the question and offer proof with regard thereto, Cf. Stark v. Wickard, 321 U.S. 288, 304, 64 S.Ct. 559, 88 L.Ed. 733, or what the procedure should be if such proof were offered, are questions which we need

ment of Labor publishes a form for furnishing the required financial information. When this latter form is accepted by the Secretary of Labor, a letter certifying that fact is sent to the union, which in turn sends a copy to the Affidavit Compliance Branch of the Board. Thus at any given time it is possible for the Board and legitimately interested persons to learn the compliance status of a union. * * * The Affidavit Compliance Branch will inform anyone with a legitimate interest whether a particular union is in compliance. This includes an employer whose employees are members of a union about which he wishes compliance information. * * * When a case is initi-

ated before the Board by a petitioning or charging union, compliance is checked not once, but continually throughout the pendency of the matter. In an unfair labor practice case, checks must be made during the investigation prior to the issuance of a complaint, which is the critical date, and before an order to bargain is entered in the case of a violation of Section 8(a) (5)."

2. For the regulations requiring that compliance with section 9(f) (g) and (h) of the Act must be shown by the union at the time of filing a charge or petition, see 13 F.R. 4871, C.F.R.1949, Title 29, sec. 101.3.

not decide, as they are not raised on the record before us since no such proof was offered.

The motion to remand is without merit. The refusal of the trial examiner to permit the questions excluded on cross examination was well within the limits of his discretion, as the questions related to nothing more than argument on matters sufficiently developed in the evidence. Even if it be assumed, as the company argues, that the pressing of the questions would have elicited that the strike of the employees was because of dissatisfaction with the change in the sales and delivery service, this would not help the company, since in that case the strike would have been concerted activity with respect to terms and conditions of employment and would have furnished no ground for discharge. It is perfectly clear, however, that the strike was on account of the discharge of Hodge and the questions excluded amounted to no more than argument about the use of the word "dissatisfaction" in the letter announcing the strike. Any competent trial judge would have sustained the objection to this argumentative cross examination just as did the trial examiner.

For the reasons stated, the order of the Board will be enforced.

Order Enforced.