

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

June 13, 1975

The Honorable Jack K. Williams
President
Texas A & M University
College Station, Texas   77843

Opinion No. H- 627

Re: Validity of regulations
issued by the State Entomologist
to eradicate contagious diseases
of honeybees.

Dear President Williams:

You have requested our opinion concerning the validity of regulations
issued by the State Entomologist to eradicate contagious diseases of honey
bees. You ask about regulations E and H of the Provisions of the Protective
Quarantine and Revised Regulations effective March 1, 1975. The two regula-
tions involved prohibit the movement of honey bees into Texas between March 1
and September 15 and prohibit the establishment of new beeyards within two
miles of a registered beeyard.

It is our understanding that these regulations are principally directed
at the eradication of American Foulbrood, a honey bee disease believed to be
on the rise in Texas. Foulbrood has long been the subject of regulatory
efforts. See Wyant v. Figy, 66 N. W. 2d 240 (Mich. 1954); Graham v. King-
well, 24 P. 2d 488 (Calif. 1933). For the period of the protective quarantine,
the State Entomologist plans to concentrate the efforts of his department on
the eradication of Foulbrood in existing beeyards within the State. Since most
of the 50 to 60 thousand colonies which enter the State each year do so in the
early fall, it is our understanding that upon the September 15 expiration of the
quarantine the State Entomologist plans to direct the efforts of his department
toward inspection of imported bees.

The two mile spacing rule is likewise directed at the control of
disease. We understand that honey bees have a proclivity for "robbing" honey
from neighboring beehives when the supply of natural honey ingredients
diminishes. While the flight range of honey bees is greater than two miles, it
is believed that this spacing rule will contribute to the control of the spread of
the disease.

The authority of the State Entomologist is provided in Title 17 of the Civil Statutes. Article 550, V. T. C. S. , provides:

> The State Entomologist shall have power to deal with all contagious or infectious diseases of honey bees, which in his opinion, may be prevented, controlled or eradicated, and to do and perform such acts as, in his judgment, may be necessary to control, eradicate or prevent the introduction, spread or dissemination of any and all contagious diseases of honey bees as far as may be possible, and to make such rules and regulations, not inconsistent with law, as may be necessary to enforce this law. The State Entomologist shall have authority to prohibit the shipment or bringing into this State of any honey bees, honey, honeycomb, or articles or things capable of transmitting contagious or infectious diseases of bees from any State, territory or foreign country except under such rules and regulations as may be adopted and promulgated by said State Entomologist.

Articles 555 and 564a, V. T. C. S., empower the State Entomologist to declare a protective quarantine in any defined area of the state, which quarantine may prohibit the movement or shipment of bees and appliances into the area.

It is well accepted that a state's police power extends to the prevention and control of disease in animals and other agricultural endeavors. Smith v. St. Louis and Southwestern Ry. Co., 181 U. S. 248 (1901); Attorney General Opinion H-195 (1974). The legislature may vest executive officers with discretion in the exercise of this power, and regulatory agencies so authorized may adopt rules and designate areas for quarantine. See generally 16 C. J. S., Constitutional Law, §138, p. 588; Williams v. State, 176 S. W. 2d 177 (Tex. Crim. App. 1943).

Article 550, supra, constitutes a delegation of authority to enact rules and regulations for the control and prevention of disease and expressly authorizes the State Entomologist to both prohibit "the shipment or bringing into this State of any honey bees," and to "perform such acts as . . . may be necessary to control . . . the . . . spread of disease." In our opinion the quarantine

involved in your request is clearly authorized by article 550, 555 and
564a. Since the spacing rule is not specifically authorized by statute, in
our view it is valid only if it is within the power granted by article 550,
that is, it must be "necessary to control . . . the . . . spread of disease."
Whether the rule is necessary is a question of fact which cannot be
resolved in an opinion of this office. The State Entomologist has developed
a plan for the control of Foulbrood, and we cannot rule as a matter of law that
the regulations constitute an unreasonable plan to fulfill his statutory responsi-
bilities. See Gandy v. State, 220 S. W. 339 (Tex. Crim. App. 1920); Mulkey
v. State, 201 S. W. 991 (Tex. Crim. App. 1918); Smith v. State, 168 S. W. 522
(Tex. Crim. App. 1914); Nunley v. Texas Animal Health Commission, 471
S. W. 2d 144 (Tex. Civ. App. -- San Antonio 1971, writ ref'd n. r. e.); Serres
v. Hammond, 214 S. W. 596 (Tex. Civ. App. -- Beaumont 1919, no writ).

While these regulations apparently are valid under Texas law, the
prohibition of movement of honey bees into Texas must be examined in light
of its effect on interstate commerce. The United States Supreme Court has
addressed similar prohibitions concerning the movement of livestock in
Railroad Co. v. Husen, 95 U. S. 465 (1877) and Smith v. St. Louis and South-
western Ry. Co., 181 U. S. 248 (1901). Husen involved a ban on the importation
of Texas, Mexican, or Indian cattle for eight months of the year. The Court
held the prohibition unconstitutional as a direct burden on interstate commerce.
This case is distinguishable from the regulation involved here, for the pro-
hibition "[was] not a quarantine law." (95 U. S. at 473). However, further
evolution of the police power in this context has rendered the validity of
Husen questionable. 4 Am. Jur. 2d Animals, § 33, n. 2, p. 285.

We believe Smith v. St. Louis, supra, to establish the controlling
law in this field. That case involved a regulation of the Texas Live Stock
Sanitary Commission which prohibited the importation of Louisiana cattle
for five months of a year. In sustaining the regulation, the Court stated
that the principle of Husen:

> . . . does not depend upon the number of States which
> are embraced in the exclusion. It depends upon whether
> the police power of the State has been exerted beyond its
> province - exerted to regulate interstate commerce. . .
> to an extent beyond what is necessary for any proper
> quarantine. 181 U. S. at 255 (Emphasis in original).

It further recognized that:

> Quarantine regulations. . . must vary with the nature
> of the disease to be defended against. 181 U.S. at 257.

The Court also noted that the true purpose of the regulation is relevant as to whether it constitutes a proper quarantine and that regulatory acts are presumed valid. Id. at 257, 258.

In our view the limited duration of the honey bee quarantine, the timing of the quarantine so that it will interfere as little as possible with the principal period of interstate honey bee shipment, and its clearly valid purpose are factors which support its validity as a "proper quarantine." Of course, whether the regulations are reasonable, is a question of fact, but it is our opinion that the protective quarantine cannot be said as matter of law to violate the United States Constitution as a burden on interstate commerce.

## SUMMARY

> The regulation of the State Entomologist which
> establishes a protective quarantine on the State
> from March 1 to September 15 is not invalid as a
> matter of law. The regulation which establishes
> a two mile spacing rule for beeyards is valid if it
> is necessary to control the spread of disease.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb