## RASMUSSEN *v.* IDAHO.

ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 215. Submitted March 18, 1900.—Decided April 22, 1901.

The provision in the statute of March 13, 1899, of Idaho that "whenever the governor of the State of Idaho has reason to believe that scab or any other infectious disease of sheep has become epidemic in certain localities in any other State or Territory, or that conditions exist that render sheep likely to convey disease, he must thereupon by proclamation, designate such localities and prohibit the importation from them of any sheep into the State, except under such restrictions as, after consultation with the state sheep inspector, he may deem proper," does not conflict with the Constitution of the United States.
This case distinguished from *Railroad Company* v. *Husen,* 95 U. S. 465.

On March 13, 1899, the legislature of Idaho passed an act, the first section of which contains the following:

"Whenever the governor of the State of Idaho has reason to believe that scab or any other infectious disease of sheep has become epidemic in certain localities in any other State or Territory or that conditions exist that render sheep likely to convey disease, he must thereupon, by proclamation, designate such localities and prohibit the importation from them of any sheep into the State, except under such restrictions as, after

consultation with the state sheep inspector, he may deem proper." Session Laws, Idaho, 1899, p. 452.

Subsequent provisions of the statute prescribed penalties for its violation. On April 12, 1899, the Governor of Idaho issued the following proclamation:

" PROCLAMATION.

"*Scheduling certain Localities on Account of Scab or Scabbies.*

" STATE OF IDAHO, EXECUTIVE OFFICE.

" Whereas, I have received statements 'from reliable wool growers and stock raisers of the State of Idaho, said statements being ·supplemented by affidavits of reputable persons, all to the effect that the disease known as scab or scabbies is epidemic among sheep in certain localities or districts, viz., in the county of Cache, State of Utah; the county of Box Elder, in the State of Utah; and the county of Elko, in the State of Nevada ; and,

" Whereas, it is known that sheep from said districts are annually moved, driven or imported into the State of Idaho, and if so moved would thereby spread infection and disease on the ranges and among the sheep of this State, which act would result in great disaster:

" Now, therefore, I, Frank Steunenberg, governor of the State of Idaho, by virtue of authority in me vested, and after due consultation with the state sheep inspector, do hereby prohibit the importation, driving or moving into the State, of Idaho of all sheep now being held, herded or ranged within said infected districts, viz., the county of Cache, in the State of Utah; the county of Box Elder, in the State of Utah, and the county of Elko, in the State of Nevada, or which may hereafter be held, herded or ranged within said infected districts, for a period of sixty days from and after the date of this proclamation; after the termination of said sixty days sheep can be moved into this State only upon compliance with the laws of the State of Idaho regarding the inspection and dipping of sheep."

Under this statute and the accompanying proclamation the plaintiff in error was arrested, tried and convicted in the District Court of the Fifth Judicial District sitting in and for the

county of Oneida, State of Idaho. His conviction was sustained by the Supreme Court of the State, 59 Pac. Rep. 933, and to reverse such judgment of conviction this writ of error was sued out.

*Mr. Arthur Brown* and *Mr. Henry P. Henderson* for plaintiff in error.

*Mr. Samuel H. Hays* and *Mr. Frank Martin* for defendant in error.

MR. JUSTICE BREWER, after making the above statement of the case, delivered the opinion of the court.

The judgment of the Supreme Court of Idaho establishes that there is no conflict between this legislation and the constitution of the State, and it is not within the province of this court to review that question. *Merchants' &c. Bank* v. *Pennsylvania*, 167 U. S. 461, and cases cited in the opinion.

The single question, therefore, for our consideration is whether this legislation conflicts with the Federal Constitution. Plaintiff in error relies largely on *Railroad Company* v. *Husen*, 95 U. S. 465.. In that case the validity of an act of the State of Missouri was presented. The act provided that "no Texas, Mexican or Indian cattle shall be driven or otherwise conveyed into or remain in any county in this State between the first day of March and the first day of November in each year by any person or persons whatsoever." It was held to be in conflict with the constitutional grant of power to Congress to regulate commerce between the States. In the opinion the police power of the State, the power by which the State prevents the introduction into its midst of noxious articles, was fully recognized, but attention was called to the fact that there was an absolute prohibition of the bringing in of Texas, Mexican or Indian cattle during eight months of the year, without reference to the actual condition of the cattle, and it was said:

"Tried by this rule, the statute of Missouri is a plain intrusion upon the exclusive domain of Congress. It is not a quarantine law. It is not an inspection law. It says to all natural

persons and to all transportation companies, 'you shall not bring into the State any Texas cattle or any Mexican cattle or Indian cattle, between March 1 and December (November) 1 in any year, no matter whether they are free from disease or not, no matter whether they may do an injury to the inhabitants of the State or not. . . . Such a statute, we do not doubt, is beyond the power of a State to enact. To hold otherwise would be to ignore one of the leading objects which the Constitution of the United States was designed to secure." p. 473.

It will be perceived that the act was an absolute prohibition operative during eight months of each year. It was an act continuous in its force; provided for no inspection, and was predicated on the assumption that the State had the right to exclude for two.thirds of each year the introduction.of all those kinds of cattle, sick or well, and whether likely to distribute disease or not.

In the case before us the statute makes no absolute prohibition of the introduction of sheep, but authorizes the Governor to investigate the condition of sheep in any locality, and, if found to be subject to the scab or any epidemic disease liable to be communicated to other sheep, to make such restriction on their introduction into the State as shall seem to him, after conference with the state sheep inspector, to be necessary. The executive acted on the authority thus conferred, and, after consultation with the state sheep inspector and examination of the matter, found that the scab was epidemic in certain localities in Utah and Nevada, and that if sheep from those localities were moved therefrom into Idaho they would spread infection and disease among the sheep of the State, and thereupon forbade the introduction of sheep from such localities for the space of sixty days. It will be perceived that this is not a continuous act, operating year after year irrespective of any examination as to the actual facts, but is one contemplating in every case investigation by the chief executive of the State before any order of restraint is issued. Whether such restraint shall be total or limited, and for what length of time, are matters to be determined by him upon full consideration of the condition of the sheep in the localities supposed to be affected. The statute was an act

of the State of Idaho contemplating solely the protection of its own sheep from the introduction among them of an infectious disease, and providing for only such restraints upon the intro- duction of sheep from other States as in the judgment of the State was absolutely necessary to prevent the spread of disease. The act, therefore, is very different from the one presented in *Railroad Co.* v. *Husen, supra,* and is fairly to be considered a purely quarantine act, and containing within its provisions nothing which is not reasonably appropriate therefor. There being no other Federal question in the case the judgment of the Supreme Court of Idaho is

*Affirmed.*