SMITH et al. v. LOWE et al.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1903.)

No. 837.

1. POLICE POWERS—INSPECTION LAWS AFFECTING INTERSTATE COMMERCE—UN-
LAWFUL MEANS OF ENFORCEMENT.

Under the rule that the police power of a state cannot obstruct inter-
state commerce beyond the necessity for its exercise, state officers can-
not accomplish, under the protection of a valid law, results which the
state is forbidden to accomplish by legislation; and it is open to the
courts to determine whether their action is within the lawful and con-
stitutional powers conferred upon them by the statute, or whether it
exceeds such powers, and amounts to an unconstitutional obstruction
of interstate commerce.

2. SAME—EQUITY JURISDICTION.

The Idaho sheep quarantine act of March 13, 1899, Sess. Laws, p.
452, provides that whenever the governor has reasons to believe that
scab or any other infectious disease of sheep has become epidemic in
certain localities outside the state he must, by proclamation, designate
such localities, and prohibit the importation from them of any sheep
into the state, except under such restrictions as, after consultation with
the sheep inspector, he may deem proper. Held, that a bill by sheep
owners, alleging that defendants, acting under a proclamation issued
by the governor under such act prohibiting the importation of any sheep
from an adjoining county in another state for the period of 40 days,
prevented complainants from driving their sheep across the line into
Idaho for pasturage on their own and the public lands within the state
as they were accustomed to do each spring, and for shipment to market,
stated a cause of action for equitable relief by injunction, where it also
alleged that such sheep were free from disease, and had been so found
by the United States inspectors; that there was no infectious disease
epidemic on the range where they were or had been; and that the
reasons stated in the proclamation for such prohibition were false and
groundless, and were based on statements made by defendants and
others for the purpose of excluding sheep of other owners, and securing
a monopoly of the grazing on the public lands within the state; and
where it also showed that the exclusion would work irreparable injury
to complainants.

Appeal from the Circuit Court of the United States for the Dis-
trict of Idaho.

The appellants, who are citizens of the state of Utah, brought their bill for
an injunction against the appellees, citizens of the state of Idaho, alleging
therein substantially the following facts: That the appellants own 72,500
head of sheep, which they had in former years grazed during the spring,
summer, and fall of the year in the states of Idaho and Wyoming upon their
own lands and upon the public domain, and that in the winter and early
spring they ranged their sheep on the deserts in Utah and Nevada, but chiefly
in Box Elder county, Utah, the county which constitutes the greater part
of the northern boundary of that state. That on March 21, 1901, the sheep
were in said Box Elder county, Utah, near the Idaho line, and the appellants
were about to take them over the state line into the state of Idaho for the
purpose of obtaining pasturage on the public domain and upon the land of the
appellants in that state and in Wyoming. That said sheep were wholly de-
pendent upon the winter snows for water while in said Box Elder county,
Utah, and where they were on March 21, 1901, the time of the commence-
ment of the suit. That, if said sheep were detained where they were then,
or were prevented from passing to their accustomed spring and summer range
in the states of Idaho and Wyoming, they would be destroyed, and would die
for want of water and feed, neither of which could be obtained where they

121 F.—48

then were, or whence they had come on said desert. That the appellants were and had been endeavoring to drive their sheep over the said public domain from the state of Utah into the states of Idaho and Wyoming, and were prevented from so doing by the appellees. That one-third of the sheep were on their way to the eastern market in the states of Nebraska, Missouri, and Illinois. That it was necessary for them to have feed, which, according to the customary way of raising sheep in that locality, could only be obtained profitably by grazing on the public domain. That, if not prevented by the appellees, the appellants would so transport their sheep from the state of Utah, through the states of Idaho and Wyoming, to the said markets. That the balance of said sheep would remain in the state of Idaho, and be grazed there during the summer. That without the said privilege the appellants would be irreparably damaged. That the appellees, their associates, confederates, and agents, were preventing the appellants from driving their sheep into the state of Idaho in order to obtain for themselves and their associates the exclusive use of the said public range in the state of Idaho, and the grass growing on the lands of the government of the United States therein. That, if the appellants drive their sheep into the state of Idaho, upon the said public domain, the appellees will threaten to and will force said sheep back where they then were upon said desert, where there is no food or water, and by so doing will cause irreparable damage to the appellants. That the alleged authority of the appellees for their acts is contained in a legislative act of the state of Idaho and a proclamation issued by the governor of that state, the former of which reads as follows:

"An act establishing quarantine against diseased sheep, prescribing the duties of the governor and state sheep inspector in relation thereto; and providing penalties, for the infraction of its provisions.

"Be it enacted by the Legislature of the state of Idaho:

"Section 1. Whenever the Governor of the state of Idaho has reasons to believe that scab or any other infectious disease of sheep has become epidemic in certain localities in any other state or territory, or that conditions exist that render sheep likely to convey disease, he must thereupon by proclamation, designate such localities and prohibit the importation from them of any sheep into the state, except under such restrictions as, after consultation with the state sheep inspector, he may deem proper.

"Any person or corporation, who, after publication of such proclamation, receives in charge any such sheep from any of the prohibited districts and transports, conveys or drives the same to and within the limits of any of the counties of this state, is punishable by a fine not exceeding one thousand ($1,000) dollars, nor less than two hundred ($200) dollars, and is liable for all damages that may be sustained by any person by reason of the importation of such prohibited sheep.

"Sec. 2. Whenever the proclamation of the Governor, issued as hereinbefore provided shall prohibit the driving or importation of sheep into this state from another state or territory, or subdivisions thereof, it shall be the duty of the state sheep inspector or any of his deputies, to drive or transport said sheep so coming into this state in violation of said proclamation back across the state line from which they came, using all necessary force in so doing; provided, that the state sheep inspector or his deputies may employ such assistance as may be necessary for the enforcement of the provisions of this act; and the costs of such deportation shall be a lien upon said sheep: provided, that if the fine and costs in this act provided shall not be immediately paid the deputy sheep inspector shall retain a sufficient number of said sheep to pay such fine and costs, which sheep shall be sold to pay the same, by the deputy sheep inspector, in the same manner as provided by law for the sale of personal property to satisfy a judgment, and for such services the deputy sheep inspector shall receive and retain such fees as is allowed sheriffs for like services to be taxed as costs.

"Sec. 3. Any person failing or refusing to assist such deputy sheep inspector, as in the preceding section provided, shall be punished as in section 6517 of the Revised Statutes of Idaho (1887) made and provided."

Sess. Laws 1901, pp. 25, 26.

The proclamation is as follows:

"Whereas, under the provisions of the act of the Legislature of the state of Idaho, entitled, 'An act establishing quarantine against diseased sheep, prescribing the duties of the governor and state sheep inspector in relation thereto, and providing penalties for the infraction of its provisions,' it is made my duty, whenever I shall have good reason to believe that scab, or any other infectious disease of sheep has become epidemic in certain localities in any other state or territory, or that conditions exist that render sheep likely to convey disease, that I shall thereupon, by proclamation, designate such localities, and prohibit the importation of sheep from such localities, except under such restrictions as I, after consultation with the state sheep inspector, may deem proper; and,

"Whereas, I have received statements from reliable wool growers and stock raisers of the state of Idaho, and have also received an official report from the state sheep inspector, based upon personal examination, as well as affidavits of responsible citizens of this state, to the effect that the disease known as scab or scabbies is epidemic among sheep in certain localities and districts, to wit, in the counties of Rich, Cache and Box Elder in the state of Utah, in the county of Uintah in the state of Wyoming, and the county of Elko in the state of Nevada; and,

"Whereas, from such statements, reports and affidavits, I have reason to believe that the disease known as scab or scabbies has become epidemic among sheep in said above-stated localities or districts; and,

"Whereas, it is known that sheep from said districts are being moved, driven and imported into the state of Idaho, and that such sheep from said districts, if moved, driven or brought into this state, will thereby spread infection and disease on the ranges and among the sheep of this state, which act would result in great disaster:

"Now, therefore, I, Frank W. Hunt, Governor of the state of Idaho, by virtue of authority in me vested, and after due consultation with the state sheep inspector, do hereby prohibit the importation, driving or moving into the state of Idaho, of all or any sheep now being held, herded, or ranged within said infected districts, or that may be driven through said districts, viz., the counties of Rich, Cache and Box Elder in the state of Utah, the county of Uintah in the state of Wyoming, and the county of Elko in the state of Nevada, or which may hereafter be held, herded or ranged within, or driven through, said infected districts, for a period of 40 days from and after the date of this proclamation. After the termination of said 40 days, sheep from said infected districts may be moved into this state only upon compliance with the terms of the act of the Legislature of the state of Idaho, entitled 'An act to suppress contagious and infectious diseases of sheep, to create the office of sheep inspector,' etc., approved March 7, 1901 [Sess. Laws 1901, p. 142]. That any sheep imported into this state from the said infected districts, over any railway, and which are unloaded at any point in this state for the purpose of feeding or grazing upon the ranges within this state, shall be held and quarantined within two miles of the point where unloaded for a period of 15 days. And at the expiration of said 15 days, said sheep shall be inspected by the state sheep inspector, or his deputies, and if found free from disease may be allowed to graze upon the ranges, or if said inspection shall show that said sheep are diseased, before they shall be allowed to travel over or graze upon the ranges, they shall be held and dipped as provided in the act of the Legislature of the state of Idaho, entitled 'An act to suppress contagious and infectious diseases of sheep,' etc.; approved March 7, 1901 [Sess. Laws 1901, p. 142], until said sheep are cured of all disease. That the quarantine proclamation heretofore issued by me, on the 11th day of February, 1901, is hereby revoked."

That the facts which are claimed to exist, and which are referred to in said proclamation as reasons for making the same, are false and groundless, and were given to said Governor, if he has received the same, for the sole purpose of inducing him to assist the appellees, their associates and confederates, in obtaining for themselves the monopoly of the grazing lands on the public domain of the United States in the state of Idaho. That the

said sheep of the appellants were free from scab, and the district referred to in said proclamation through which the said sheep had traveled and had been grazed was free from scab and disease of all kinds. That the laws of the United States provide for the inspection of sheep passing from one state to another, and for the inspection of said diseases referred to in said proclamation and law of the state of Idaho. That the federal government employs inspectors of sheep, who inspect all sheep passing from one state to another, and determine whether said sheep are infected with disease, and particularly the disease known as scab; and said inspectors had and were then inspecting the said sheep, and the appellants had caused their said sheep to be so inspected in conformity with the laws of the United States and said inspection disclosed that the sheep and the range upon which they then were and had been was free from disease, particularly the disease of scab.

To this bill of complaint the defendants demurred for want of equity. The demurrer was sustained, and thereupon a decree was entered dismissing the appellants' bill, from which they take their appeal.

Arthur Brown, James H. Moyle, Brown & Henderson, and Lindsay B. Rogers, for appellants.

Frank Martin, W. E. Borah, and E. J. Dockery, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Assuming, as we must, that all the facts pleaded in the bill of complaint are true, the question is presented whether a case is stated for equitable relief. Upon the application for a temporary restraining order in the court below, investigation was had upon affidavits and upon the oral evidence of witnesses taken in court. The court found that such evidence indicated that the sheep were not diseased, and that, according to the testimony of the chief witnesses upon both sides, sheep having the disease of scab could be so far cured as to render a passage through the country safe from the spread of the disease by dipping them twice at intervals of 10 days. The court sent the chief sheep inspector of the state and the United States inspector to personally inspect the sheep. The result of their inspection was that the sheep were found practically free from disease. The court said later, in ruling upon the demurrer, "The simple facts in this case are that the sheep were not so diseased as to justify their exclusion." But, after entertaining the motion for and granting a temporary injunction, the attention of the court was directed to the recent cases of Rasmussen v. Idaho, 181 U. S. 198, 21 Sup. Ct. 594, 45 L. Ed. 820, and Smith v. St. Louis & Southwestern. Railroad Company, 181 U. S. 248, 21 Sup. Ct. 603, 45 L. Ed. 847. Upon the authority of those decisions the demurrer to the bill for want of equity was sustained, the court drawing therefrom the conclusion that when the law is upon its face one to prevent the spread of disease in a state, and is a constitutional exercise of the legislative power, the state officers may be relied upon to enforce it in good faith, and in justice to all. In other words, the conclusion reached was that state officers claiming to act under and justifying their acts by a law which is valid, are not subject to control or injunction by the courts. We are unable to agree with that conclusion, nor do we find support for that doctrine in either of the cases above referred to or in any decision

of the courts. In the Rasmussen Case the validity of the act of the Idaho Legislature of March 13, 1899—which is the act under which the defendants justify their course in the present suit—was in question. It was held that the act is not in conflict with the Constitution of the United States. There was no suggestion in that case of unlawful action under the law. The sole question was of the legality of the act. So, in the case of Smith v. St. Louis & Southwestern Railroad Company, the court considered a similar quarantine law of Texas, which made it the duty of a live stock sanitary commission, upon receipt of "reliable information" of the existence of certain diseases among cattle, to make careful examination of animals believed to be infected with such disease, and to ascertain what, if any, disease existed; and, if the disease was found contagious or infectious, it was made the duty of the commission to direct and enforce "such quarantine lines and sanitary regulations as are necessary to prevent the spread of any such disease," and to provide that no domestic animal infected with such disease should be permitted to enter or leave the district or grounds so quarantined, except by authority of the commissioners. It was held that this statute, as construed and applied, was not in conflict with the Constitution of the United States. In that case, as in the Rasmussen Case, there was no question of misconduct of the commissioners, and there was no contention that their action was controlled by improper motives, or was unjustified by the facts, except that it was contended that it did not affirmatively appear that the action of the commission was taken on sufficient information. But the court held that it did not appear that it was not taken on sufficient information, and therefore applied to the case the presumption which the law attaches to the acts of public officers. The inference fairly to be drawn from the language of the decision is that, if it had appeared that the action of the sanitary commission was taken on insufficient information, a different case would have been presented.

It is contended that the decision of the Circuit Court finds support in the case of Compagnie Francaise v. Board of Health, 186 U. S. 380, 22 Sup. Ct. 811, 46 L. Ed. 1209. But there, as in the cases above referred to, the sole question was of the validity of the quarantine law. The quarantine had been established by the State Board of Health of Louisiana, a corporation whose existence and powers were derived from the act of the Legislature of that state (section 8 of act No. 192, p. 444, of the year 1898) authorizing the State Board of Health, in its discretion, to "prohibit the introduction into any infected portion of the state persons acclimated, unacclimated, or said to be immune, when in its judgment the introduction of such persons would add to or increase the prevalence of the disease." Under this power the Board of Health excluded healthy persons from a locality infested with a contagious disease, and its power to do so was sustained by the court. No question was raised of the perversion of the law for private gain, or selfish interest, or for any improper purpose. Indeed, it is difficult to conceive how any such question could have arisen. The law did not require the Board of Health to obtain information, or to have good reason for its action, but committed the

whole matter to its judgment. In the exercise of its judgment, the board established the quarantine. It was not contended that its judgment was improperly influenced, or that its action was unwise. The case, as it was presented to the court, was one which involved only the power of a state to prevent citizens in good health from entering a quarantined district. The power was sustained, evidently upon the theory that the entrance of such persons added fuel to the flame, furnished new subjects for the disease, extended its ravages, and prolonged its life.

A leading case upon the law of quarantine is Railroad Company v. Husen, 95 U. S. 465, 24 L. Ed. 527, a case in which the court had under consideration an act of the Legislature of Missouri, which provided that no Texas, Mexican, or Indian cattle should be driven or otherwise conveyed into or remain in any county of that state between March 1st and November 1st in each year. The question was whether the statute was in conflict with the clause of the Constitution giving to Congress the power to regulate commerce, and whether it was a proper exercise of the police power. The court said, "It is a plain regulation of interstate commerce, a regulation extending to prohibition," and the court held also that it was not a lawful exercise of the police power of the state. The decision in that case recognizes the right of a state to pass sanitary laws and laws for the protection of property within its borders, and its right to prevent persons and animals suffering from any contagious or infectious disease from entering the state, and its right to establish quarantine and reasonable inspection laws, but it denies its right to interfere with transportation into the state "beyond what is absolutely necessary for its self-protection. The court said, "It may not, under the cover of exercising its police powers, substantially prohibit or burden either foreign or interstate commerce." Of the statute then under consideration, the court said:

"It is not a quarantine law. It is not an inspection law. It says to all natural persons and to all transportation companies: 'You shall not bring into the state any Texas cattle, or any Mexican cattle, or Indian cattle between March 1st and November 1st in any year, no matter whether they are free from disease or not.' * * * The police power of a state cannot obstruct foreign commerce or interstate commerce beyond the necessity for its exercise. * * * And, as its range some times comes very near to the field committed by the Constitution to Congress, it is the duty of the courts to guard vigilantly against any needless intrusion."

The application of the doctrine of that case to the present discussion leads to the inquiry: Can state officers accomplish under the protection of a valid law the very results which the state is forbidden to authorize by legislation? Here are state officers who, if the allegations of the bill are true, are so using the police power as to obstruct "interstate commerce beyond the necessity for its exercise." The contention of the appellees, followed to its logical conclusion, is that, if the act under which state officers proceed to establish a quarantine is of itself valid and constitutional, it matters not to what extent such authority be abused, nor upon what grounds or information the officers proceed. No matter how arbitrary their act, or how unfounded in necessity or reason, it must be presumed that

it is done in good faith, and the bona fides thereof is not subject to investigation. By this doctrine the power of congress to regulate interstate and foreign commerce is practically taken away, and vested in the executive officer of the states. The act of the Legislature of Idaho authorizes the Governor to proceed when he "has reasons to believe" that the conditions exist for his action. It contemplates that his action shall be well grounded in fact, and that, in the absence of such reasons, he has no authority to proceed. Such a limitation would necessarily be imported into the law if the act had been silent on the subject. The provisions of the Constitution must necessarily impose restrictions on the action of state officers, and restrain them from exercising the police power further than is reasonably necessary to secure protection against disease. It is alleged in the bill that the sheep in question were not diseased, and the court so found upon a hearing had upon the application for a temporary injunction. It is not disputed that danger of contagion from sheep diseased with scab or scabbies is removed by a simple treatment applied twice with an interval of 10 days. It is averred also, and it is not disputed, that to exclude sheep for 40 days at the usual time when such sheep are brought from Nevada and Utah into Idaho for summer pasturage is, in effect, a total exclusion. It is alleged that the true purpose of the proclamation and of the acts of the appellees is to prevent the admission of the appellants' sheep to the pasture on the public domain within the state of Idaho, and to reserve such pasturage for the sheep of the inhabitants of that state. If these averments are true, we think the appellants are entitled to equitable relief, and that the court erred in sustaining the demurrer and dismissing the bill.

The cause will be remanded, with instructions to overrule the demurrer, and for such further proceedings as may not be inconsistent with the foregoing views.