## D. H. EVANS v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

October 29, 1909.

Nos. 16,258—(69).

**Inspection of Animals — Act Constitutional.**

Chapter 355, p. 491, Laws 1907, an act to protect public health and health of domestic animals by providing for the inspection of animals imported into this state, does not violate section 8, article 1, of the constitution of the United States, vesting in congress the power to regulate commerce among the several states.

**Violation of Act Efficient Cause of Injury.**

The defendant brought into this state a horse afflicted with the glanders without complying with the statute as to inspection, and delivered it to the owner, who on the same day sold it to the plaintiff, who did not know that the horse was diseased. The horse was inspected and killed under the direction of the live stock sanitary board, to the damage of the plaintiff in the sum of $100. *Held,* that the defendant's violation of the statute was the efficient and dominant cause of the plaintiff's damages.

Action in the district court for Lyon county to recover $200 damages sustained by plaintiff. The facts are stated in the opinion. On the trial certain facts were stipulated, and defendant offered no evidence. The case was tried before Olsen, J., who made findings of fact and as conclusion of law ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order, defendant appealed. Affirmed.

*Brown, Abbott & Somsen,* for appellant.

In order to recover in this action it must appear that: (1) The act under which this action is brought [Laws 1907, c. 355] is constitutional; (2) the act has been violated by defendant; (3) he has been damaged; and (4) the violation of the act was the proximate cause of his damage.

1. The court will take judicial notice of the enormous amount

of live stock daily shipped into and through this state. No responsibility whatever is placed upon the shipper, and no standard of care is fixed, except that the company must at its peril determine and know that which in the very nature of the case cannot be known, or suffer a ruinous fine. The supreme court of the United States in Railroad Co. v. Husen, 95 U. S. 465, 472, holds that state inspection laws must be "reasonable" and that the state may not go beyond "what is absolutely necessary for self-protection" when dealing with interstate transportation; that such laws must not "burden" interstate commerce. The act in question is unreasonable, oppressive and a burden upon interstate commerce. The company is bound to accept and carry every shipment of stock presented for carriage into the state; the carrier can only demand a certificate when it is the intention to use the stock for certain specified purposes. It is neither made the duty of the owner to procure a certificate of inspection or to inform the transportation company of the proposed disposition of the stock. The transportation company has no right to procure all stock to be inspected before it is brought into the state. If the owner deliberately misstates the proposed disposition of the stock, and the transportation company fails to have the inspection made, it is not relieved of the penalty, in case an inspection should in fact have been made. If the transportation company delays the stock for inspection under section 2, and the stock was not designed for the purposes enumerated, the company will be liable for damages for delay, and can neither recover the expense of holding the stock or expense of inspection.

Under the act in question there is no possibility of the transportation company knowing the purpose of the shipment. To hold and make inspection of all shipments would be a violation of the rights of the shipper. The transportation company is by this act obliged to' violate its duty as a carrier and subject itself to damages in case it wrongfully delays and procures inspection at its own expense, or make every effort possible to discover the intended use of the animals and submit to a fine of from $50 to $1,000 if it is mistaken or deceived.

109 M.—5

The court will take judicial notice that there is much stock equally adapted to immediate slaughter and to feeding and breeding purposes; that there are market places in this state where both horses and cattle are collected for shipment to other markets outside the state; and where shipments are made to such markets there is no intention to put the stock to any of the purposes enumerated.

2. Defendant did not violate the act in question. There is no evidence in this case that at the time the horses in question reached Tracy, or at any time prior thereto, Harlin and Hoerr ever intended to make any sale of the horse in question in the state of Minnesota. There is no evidence that the horse was being brought into the state for any of the purposes enumerated in section 1 of the act. For all the evidence in this case shows, the horse may have been billed through the state of Minnesota to a point in another state and have been diverted to Tracy. It is sufficient to say that the burden of proof was upon the plaintiff to show that when the horse in question reached the state line, it was being brought into the state for some one of the purposes specified in section 1 of the act in question, and that there is absolutely no evidence that such was the case.

The law is confined solely to transportation companies. The railroad grader, the gipsy camp and the mover may pass the state line without any supervision whatever, and the stock buyer may buy and sell within the boundaries of the state without restriction. There is no policy of the law to make any general inspection of live stock in this state, or being brought into the state. The court will take judicial notice that there are large sheep feeding plants in this state; that the feeders send their agents out into the west and ship in their stock for feeding; that the proprietors of grading camps ship their horses into the state for the purpose of establishing camps and doing work within the state; that the farmers are constantly shipping stock into the state for breeding purposes. The act in question was drawn primarily to cover these conditions, and was intentionally drawn so as not to cover the other conditions above referred to. It follows that the shipment by a stock dealer of stock into this state with the indefinite purpose simply of selling it upon

the market, without reference to the use to which it may ultimately be put, does not require the carrier to have it inspected. It would have been an easy matter for the legislature to have included "sale" among the specified purposes if such had been the intent.

Where the law enjoins a duty to do, or refrain from doing, an act, not vicious in itself, knowledge and intent are necessary to guilt, unless the law expressly excludes such element.

3. The only damage which plaintiff has suffered is in purchasing a worthless horse of Harlin and Hoerr and paying $100 for it. No property has become lost, injured or depreciated in value by reason of the failure to have the horse inspected. The horse was worth nothing in the hands of the seller and nothing in the hands of the buyer. The horse would have been worth no more if it had been inspected. The proximate cause of plaintiff's loss was in buying a worthless horse and paying $100 for it.

4. The burden of proof is upon plaintiff to show that an inspection at the time it would probably have been made would have disclosed the diseased condition of the horse in question and prevented the sale. The evidence does not establish such fact.

*N. J. Robinson,* for respondent.

This law is very just and reasonable, and is absolutely necessary for the safety and protection of the health and sanitary condition of the live stock of this state. The report of the live stock sanitary board of this state shows that it has been the practice of the owners of large horse ranches in western states, when glanders have broken out among their horses, to ship them out of the state and scatter them around through this state, as well as other states, and causes horses infected with a very contagious disease to be sold for a large consideration in this state and mingled with healthy horses, so that unless it is prevented, it will become impossible for the live stock sanitary board of this state to wipe out, or even control in any manner, such contagious diseases among animals and result in enormous losses to the stock raisers of the state, and is a law that should be upheld.

START, C. J.

This action was brought in the district court of the county of Lyon to recover damages alleged to have been sustained by the defendant's violation of the provisions of chapter 355, p. 491, Laws 1907. The case was tried by the court without a jury. Findings of fact were made, and as a conclusion of law therefrom judgment was ordered and entered for the plaintiff in the sum of $100, from which the defendant appealed.

The facts found by the court are to the effect following: The defendant is, and was during the times hereinafter stated, a common carrier operating a railroad line between Tracy, this state, and Pierre, in the state of South Dakota. On August 4, 1907, the defendant, as such carrier, brought into this state, and to Tracy from Pierre, over its railway line, thirty horses, owned by Messrs. Harlin & Hoerr, and on August 14, 1907, delivered one of the horses from its car at Tracy to such owners, who on that day sold it to the plaintiff for $100, which he paid therefor. The horse, at the time the defendant delivered it to the owners thereof, and when they sold it to the plaintiff, had the glanders, and was of no value whatever by reason thereof. The plaintiff did not then know that the horse had the glanders, but he then knew that the horse had been so brought into the state from Pierre by the defendant. None of the horses, at any time prior to the sale of one of them to the plaintiff, had been examined by the state veterinarian of South Dakota, nor by a veterinarian acting under the order of the live stock sanitary board of this state, nor by a veterinarian of the United States Bureau of Animal Industry, nor by any other person, and found free from the glanders. Nor was any certificate of health, or duplicate thereof, of the horses ever made and forwarded to the live stock sanitary board of this state, nor was such board ever notified that the horses had not been so inspected. Tracy was a suitable place for holding the horses for examination by such board, but the defendant did not there so hold them. The horse so sold to the plaintiff, which was brought into this state for work and breeding purposes, was thereafter, and on May 29, 1908, examined by a veterinarian, acting under the order of the live stock sanitary board, and killed be-

cause it had the glanders, with which disease it was afflicted when it was so delivered and sold to the plaintiff. The plaintiff, by reason of the defendant's failure to comply with the provisions of the statute, as stated, sustained damages in the sum of $100.

The defendant here urges that "the trial court erred in holding that the horse in question was afflicted with glanders before it was brought into the state of Minnesota, and that the inspection required by law would have disclosed the horse to have been diseased." The trial court did not find or hold that an inspection of the horse as required by law would have disclosed that the horse was diseased, nor is it material whether a compliance with the law would have disclosed the diseased condition of the horse; for, if it did not, then the horse would have been found free from the disease, and an official certificate issued accordingly, which would have protected the defendant in any event. The defendant stipulated on the trial that the horse had the glanders on the day the plaintiff purchased it, which was on the day the defendant delivered the horse from its car to the owners. This admission fairly justifies the inference of fact that the horse was diseased before the defendant delivered it.

It is further claimed that there is no evidence to sustain the finding that the horse, which was a mare, was brought into this state for work and breeding purposes. The evidence tends to show that the horse was purchased by the plaintiff, on the day it was delivered from the defendant's car to the owners, for work and breeding purposes, particularly for driving purposes; that is, for work. The trial court might fairly infer that one of the purposes for which the horse was brought into the state by its owners was the one for which it was immediately sold. There was no evidence to the contrary. We are of the opinion that the facts found by the court are sustained by the evidence. The defendant, however, insists that the facts found do not sustain the conclusion of law and judgment of the court.

1. The first reason urged in support of this claim is that chapter 355, p. 491, Laws 1907, upon which the action is based, is unconstitutional, for the reason that it violates section 8 of article 1 of the

constitution of the United States, vesting in congress power to regulate interstate commerce.

The title of the statute is: "An act to protect the public health and health of domestic animals by providing for the inspection of live stock imported into the state of Minnesota for breeding, dairy, work or feeding purposes."

Section 1 provides that it shall be unlawful for any transportation company to bring into the state of Minnesota any of the domestic animals therein named, including horses, for work, feeding, breeding, or dairy purposes, unless they have been examined and found free from the contagious diseases therein named, including glanders, which freedom from disease shall be established by a certificate of health, signed by a state veterinarian of the state from which such shipment is made, or of this state, or of the United States, a duplicate of such certificate to be attached to the bill of lading.

Section 2 provides that where such certificate has not been obtained the transportation company shall notify the live stock sanitary board and hold such animals at the first station within this state where there are suitable facilities for holding animals for inspection by such board, the inspection to be made at the expense of the owner.

Section 3 provides that any transportation company violating the provisions of the statute shall be guilty of a gross misdemeanor and fined not less than $1,000, or be imprisoned for not more than one year; and, further, that such company or agent shall be liable to any person injured for the full amount of damages that may result from a violation of the statute.

Section 4 provides that the provisions of the statute shall not apply to cattle, hogs, and sheep shipped to points within the state where the United States bureau of animal industry maintains inspection.

The statute in question is a police measure, intended to prevent the bringing into this state, for the purposes named in the statute, domestic animals having the glanders or other contagious or infectious disease, and thereby protect the public health and the health of

domestic animals within the state. If it is in no just sense an attempt to regulate, impede, or unreasonably burden interstate commerce, but a good-faith act for the protection of the health and property of the people of the state, it is constitutional, although it may necessarily burden interstate commerce to some extent, but not unreasonably so. Railroad Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Missouri, K. & T. Ry. Co. v. Haber, 169 U. S. 613, 18 Sup. Ct. 488, 42 L. Ed. 878; Rasmussen v. Idaho, 181 U. S. 198, 21 Sup. Ct. 594, 45 L. Ed. 820.

Counsel for the defendant insist that the first two cases cited support their contention that the statute is invalid for the reason claimed. Each of the cases recognize the rule that a state, in the exercise of its police power, may for self-protection enact sanitary laws and establish reasonable inspection regulations to prevent the bringing of animals into the state having contagious or infectious diseases. It was, however, held that the particular statute under consideration in each case was not a legitimate exercise of the police power of the state, but an unreasonable burden upon and interference with interstate commerce. In the Husen case, a statute of Missouri provided that no Texas, Mexican, or Indian cattle, not kept the entire previous winter in that state, should be driven or otherwise conveyed into or remain in any county of that state between the first day of March and the first day of November in each year. Obviously the statute was neither a quarantine nor an inspection law, but an absolute exclusion from the state for eight months of each year of all cattle of the class named, without reference to whether they were sound or diseased, and the court held the statute to be a "plain intrusion upon the exclusive domain of congress."

The Minnesota statute considered and held unconstitutional in the Barber case penalized the selling in this state for human food any fresh beef, veal, mutton, lamb, or pork, not taken from an animal inspected and certified within this state by a local inspector; that is, no meat could be sold within the state unless the animal from which it was taken was inspected on the hoof within the

state. The necessary effect of the statute was to exclude from the markets of this state the products, although sound and wholesome, of all packing plants located. outside of the state. Manifestly the statute, as held by the court, was not a reasonable and good-faith inspection law, but an unnecessary burden upon interstate commerce.

It is clear that neither of these cases supports the contention of the defendant, for the statute here under consideration is essentially different from those construed in the cases cited.

In the Haber case a Kansas statute providing for the inspection and quarantine of Texas cattle was sustained, and in doing so the court, by Harlan, J., said: "Neither corporations nor individuals are entitled, by force alone of the constitution of the United States and without liability for injury therefrom resulting to others, to bring into the state from another state cattle liable to impart or capable of communicating disease to domestic animals. The contrary cannot be affirmed under any sound interpretation of the constitution. This court, while sustaining the power of congress to regulate commerce among the states, has steadfastly adhered to the principle that states possess, because they have never surrendered, the power to protect health, the public morals, and the public safety by any appropriate legislation to that end which does not encroach upon rights guaranteed by the national constitution, nor come in contact with acts of congress passed in pursuance of that instrument."

In the case of Rasmussen v. Idaho, 181 U. S. 198, 21 Sup. Ct. 594, 45 L. Ed. 820, a state statute was held valid which provided that, "whenever the governor of the state of Idaho has reason to believe that scab or any other infectious disease of sheep has become epidemic in certain localities in any other state or territory, or that conditions exist that render sheep likely to convey disease, he must thereupon, by proclamation, designate such localities and prohibit the importation from them of any sheep into the state, except under such restrictions as, after consultation with the state sheep inspector, he may deem proper."

An examination of the provisions of the statute, which is the basis of this action, will show that it is not an unreasonable exercise of the police power of the state, but a reasonable and necessary exer-

cise of the power to prevent the state from being flooded with animals which are afflicted with or have been exposed to contagious diseases from other states. The statute has no application to the transportation of domestic animals through the state, for by its terms its operation is limited to animals brought into the state for the purposes therein named. Nor is an inspection by a veterinarian, acting under the authority of the state live stock sanitary board, and his certificate, the only conclusive evidence that such animals are free from any contagious or infectious disease. The carrier is protected if there is attached to the bill of lading the certificate of a veterinarian of the state from which the animals are shipped, or of the United States Bureau of Animal Industry, or of the live stock sanitary board of this state. The only burden placed upon the carrier is that it requires the shipper to furnish such a certificate to be attached to the bill of lading.

It is urged by defendant that there is no provision of the statute requiring the shipper to furnish such certificate, and he may refuse to comply with the request. Section 2 of the statute provides for such a contingency. The carrier in such a case may bring the animals into this state by notifying the state live stock sanitary board that the required certificate has not been furnished by the shipper, and by holding the animals at the first station within the state having suitable facilities for inspection by such board, which can then deal with them as provided by R. L. 1905, § 2158. In a word, the only burden placed upon the carrier is either to obtain and attach to the bill of lading the required certificate or to notify the state board and hold the animals for inspection at the first suitable station within this state. We hold that the statute does not violate section 8, art. 1, of the constitution of the United States.

2. The second alleged reason why the judgment is not sustained by the facts found by the trial court is to the effect that there is no finding that the defendant knew the purpose of the shipment of the horse. There was neither allegation nor evidence on the part of the defendant that it did not know the purpose of the shipment; hence there was no such issue before the court. If the defendant had alleged in effect in its answer that it had no knowledge of the

purpose for which the horses were shipped, and was unable to learn by the exercise of due care, and had supported the allegation by competent evidence, the case of Furley v. Chicago, 90 Iowa, 146, 57 N. W. 719, 23 L. R. A. 73, and others cited by the defendant, would be in point. Whether our statute can be properly construed so as to make want of knowledge of the purpose of the shipment a defense we have no occasion here to decide, .for it was not made in this case.

3. The last contention of the defendant to be considered is to the effect that no damages resulted from the defendant's violation of the' statute, and that in any event the plaintiff's loss of the horse and consequent damages were not the proximate result of such violation. The argument in support of this claim is substantially this: "The only damage which plaintiff has suffered is in purchasing a worthless horse of Harlin & Hoerr and paying $100 for it. No property. has become lost, injured, or depreciated in value by reason of the failure to have the horse inspected. The horse was worth nothing in the hands of the seller, and nothing in the hands of the buyer. The horse would have been worth no more if it had been inspected. The proximate cause of plaintiff's loss was in buying a worthless horse and paying $100 for it. * * * There is no evidence that any inspection would have disclosed the horse in question to have been diseased."

The fact remains, however, that the plaintiff knew that the horse had been brought into this state by the defendant from South Dakota, and he had a right to assume that it had complied with the law. The findings of fact justify the conclusion that if the defendant had refused to bring the horses into Minnesota without the necessary certificate being attached to the bill of lading, or if, when they reached Tracy, it had notified the state sanitary board, no damage would have resulted to the plaintiff; for it is admitted that the horse had the glanders on the day the defendant delivered it from its car, and it is fair to presume that an inspection would have disclosed its condition, and the plaintiff would not have purchased it. It would seem to follow that his damages were the direct and natural result of the defendant's violation of the statute. He never intended

to purchase a diseased and worthless horse, and the procuring cause of his doing so was the defendant's breach of duty. While it is true, as claimed, that the plaintiff would not have been damaged if he had not purchased the horse, it is equally true that he could not have purchased it if the defendant had observed the law and notified the board; for, had it done so, the horse would have been inspected and quarantined at Tracy. This case, then, falls within the rule that, although a negligent and unlawful act be removed from the injury by an intermediate cause, yet, if the guilty party ought reasonably to have anticipated that injury might result to others from his act, it is deemed to be the proximate cause of the injury. Schubert v. J. R. Clark Co., 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. 559; Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640; Teal v. American Mining Co., 84 Minn. 320, 87 N. W. 837; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Skinn v. Reutter, 135 Mich. 57, 97 N. W. 152, 63 L. R. A. 743, 106 Am. St. 384; 6 Words & Phrases, 5765.

It is to be noted that the statute upon which this action is based gives a cause of action, not simply to those for whose protection it was intended, but to any person injured, for the full amount of damages that may result from the violation of the act. The imposition of this civil liability is one of the provisions selected by the legislature to secure an observance of the act by transportation companies. It is therefore immaterial in this action that the statute does not prohibit the bringing into this state diseased domestic animals for sale. Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591, 64 Am. St. 472.

We hold that the violation of the statute by the defendant was the efficient and dominant cause of the plaintiff's damages.

Judgment affirmed.