MUST HATCH INCUBATOR CO., Inc., v.
PATTERSON, Governor of Oregon,
et al.

District Court, D. Oregon.   July 27, 1927.

On Motion to Dismiss Bill of Complaint,
October 31, 1927.

No. 8915.

See, also, 27 F.(2d) 447.

Dey, Hampson & Nelson, of Portland, Or., for plaintiff.

I. H. Van Winkle, Atty. Gen., and Willis S. Moore, Asst. Atty. Gen., of Oregon, for defendants.

Before GILBERT, Circuit Judge, and BEAN and McNARY, District Judges.

PER CURIAM. This is a suit brought by a California corporation to restrain the defendants from enforcing the regulations of the state live stock sanitary board of the state of Oregon, made in pursuance of an act of the Legislature of said state passed in 1913. Laws 1913, p. 34. The regulations in question are as follows:

"All hatching eggs, baby chicks, growing and breeding stock, transported or otherwise moved into the state of Oregon, must be accompanied by an official health certificate certifying as follows:

"1. That all hatching eggs, baby chicks and growing stock have come from parent stock which has been found free from bacillary white diarrhea by the application of the agglutination test within twelve months immediately prior to the time when such hatching eggs, baby chicks or growing stock are transported or moved into the state.

"2. That all stock to be used for breeding purposes have been tested by the agglutination method within the twelve months prior to importation and found free from bacillary white diarrhea:

"Provided, however, that eggs for immediate consumption or storage, stock for immediate slaughter, and stock for exhibition purposes, and official egg-laying contests be not included in this order.

"All certificates for importation or interstate movement of poultry must be approved by the recognized live stock sanitary officials of the state of origin."

Plaintiff contends that the enforcement of the provisions of these regulations would constitute an unlawful attempt to regulate interstate commerce, and would contravene section 8 of article 1 of the Constitution of the United States.

It appears from the complaint that plaintiff "is now and for several years last past has been engaged in the breeding of and the transportation and sale in interstate commerce of baby chicks"; that "its hatcheries are located in the Petaluma district in the state of California, from which point it ships annually to buyers in the state of Oregon approximately 500,000 baby chicks, of the value of approximately $75,000, and also ships annually into and through the state of Oregon into other states and foreign countries in excess of 1,000,000 baby chicks, of the value of approximately $150,000"; that no authorized inspector exists in the state of California, "who is authorized by such state to do bacillary white diarrhea agglutination test work. No bacillary white diarrhea official state flock test charts exist in said state. No official bacillary white diarrhea agglutination tests are carried on in or by the state of California. No official description of the agglutination test has been supplied by an Oregon laboratory. No state board or official exists in the state of California, authorized by law to carry on the tests or issue the certificates required by the regulations of the state live stock sanitary board of the state of Oregon." It is further averred, in effect, that the enforcement of said regulations would render ineffective any attempt upon the part of the plaintiff to procure orders for the sale of chicks within the state of Oregon, and result in inflicting upon its business a vital and irreparable injury.

The state has power to pass quarantine and inspection laws, and to prescribe the necessary regulations, as well as the subject to which they may be applied. This power, however, cannot go beyond the necessities of the case and prohibit or burden interstate commerce. Hannibal & St. J. R. Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Missouri, Kansas & Texas R. Co. v. Haber, 169 U. S. 613, 18 S. Ct. 488, 42 L. Ed. 878; Town of

Greensboro v. Ehrenreich, 80 Ala. 579, 2 So. 725, 60 Am. Rep. 130; Evans v. Chicago & N. W. R. Co., 109 Minn. 64, 122 N. W. 876, 26 L. R. A. (N. S.) 278. In the first case cited the court said, at page 472 of 95 U. S. (24 L. Ed. 527):

"While we unhesitatingly admit that a state may pass sanitary laws, and laws for the protection of life, liberty, health, or property within its borders; while it may prevent persons and animals suffering under contagious or infectious diseases, or convicts, etc., from entering the state; while for the purpose of self-protection it may establish quarantine, and reasonable inspection laws—it may not interfere with transportation into or through the state, beyond what is absolutely necessary for its self-protection. It may not, under the cover of exerting its police powers, substantially prohibit or burden either foreign or interstate commerce."

The Governor's proclamation declares it to have been determined that the poultry industry of Oregon is suffering a severe loss annually from bacillary white diarrhea in baby chicks, and the regulations provide that the importation of hatching eggs and baby chicks and growing and breeding stock of poultry must be accompanied by an official health certificate. There can be no question of the power of the state Legislature to exclude the importation of eggs or chicks that will result in disease to the poultry of the state, there having been no act of Congress covering the matter. By the Act of May 29, 1884 (23 Stat. 31), Congress conferred the power to exclude from interstate commerce diseased cattle and horses, and the Act of August 15, 1921, 42 Stat. 159 (7 USCA § 181 et seq.), known as the Packers and Stockyards Act, defines "live stock" to mean cattle, sheep, swine, horses, mules, or goats, whether live or dead. Oregon, therefore, has not entered a field from which it has been excluded by Congress.

There being no doubt of the authority of the state to exclude the importation of eggs and chicks which will bring disease to the poultry of Oregon, the only question in the case is whether or not it is shown by the bill that the provisions of the act are unreasonable.

Similar state statutes have been brought before the courts on the question of their validity. The Act of Congress of March 3, 1905 (33 Stat. 1264), authorizing the secretary of Agriculture to quarantine any state or any portion thereof when he shall have determined that cattle or other live stock in such state or territory are affected with any

contagious disease, was upheld. Rasmussen v. Idaho, 181 U. S. 198, 21 S. Ct. 594, 45 L. Ed. 820.

"The state—Congress not having assumed charge of the matter as involved in interstate commerce—may protect its people and their property against such dangers, taking care always that the means employed to that end do not go beyond the necessities of the case or unreasonably burden the exercise of privileges secured by the Constitution of the United States." Reid v. Colorado, 187 U. S. 137, 23 S. Ct. 92, 47 L. Ed. 108. In the same case (187 U. S. 148, 23 S. Ct. 96) it was said: "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly manifested." And the court held that such regulations must be assumed to be appropriate and reasonable unless they appeared on their face to be unreasonable. In Asbell v. Kansas, 209 U. S. 251, 28 S. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101, the state statute made it a misdemeanor to transport into the state cattle from any point south thereof, except for immediate slaughter, without an inspection and certification as healthy, either by the proper state official or by the Bureau of Animal Industry of the Interior Department.

From the facts alleged in the bill in the present case, it does not necessarily follow that the requirements of the Oregon law are unreasonable. It is obviously impossible that the desired protection from the specified disease could be secured by any inspection of eggs or chicks as they arrive at the state line. No method of detecting the presence of a diseased condition in eggs or chicks is conceivable, other than that which the act provides. It is not ground for injunctive relief to say that no inspector exists in the state of California who is authorized by the state to do bacillary white diarrhea agglutination test work, or that no such tests are carried on in or by the state, or that no official description of the test has been supplied by an Oregon laboratory, or to allege that the enforcement of the regulations will render ineffective any attempt on the plaintiff's part to sell eggs or chicks within the state of Oregon.

There being no affidavits or proof to sustain the charge that the regulations are unreasonable, the application for a restraining order is to be determined solely upon a consideration of the provisions of the regulations in the light of the question whether or not they appear upon their face to be unreasonable. We are not convinced that they so appear to be unreasonable. The application is denied.

On Motion to Dismiss Bill of Complaint.

Before RUDKIN, Circuit Judge, and BEAN and McNARY, District Judges.

PER CURIAM. This case is before the court upon a motion of the defendant to dismiss the complaint, upon the ground that it does not state facts sufficient to constitute a cause of suit.

In an opinion by this court, denying the application of the plaintiff for a temporary restraining order, it was held that Oregon had not entered a field from which it had been excluded by an act of Congress, for the reason that the term "live stock," as used in the Acts of Congress of February 2, 1903 (32 Stat. 791), and March 3, 1905 (33 Stat. 1264, c. 1496) did not include poultry. In this opinion the definition of the term "live stock," as given by an act of Congress known as the Packers and Stockyards Act (7 USCA § 181 et seq.), was adopted.

It is a rule of statutory construction that a legislative construction in one act of the meaning of a word is entitled to consideration in construing the same word in another act, and this rule is entitled to great weight where the two acts pertain to the same subject-matter. In The Matilda A. Lewis, Fed. Cas. No. 9,281, 5 Blatchf. 520, it was held that the term "live stock," as used in an order by the Secretary of War, did not embrace fowls.

There is nothing in the record showing that the regulations in question are discriminatory. The motion to dismiss the bill of complaint will be sustained.