

# THE ATTORNEY GENERAL
## OF TEXAS

**JOHN L. HILL**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

January 4, 1974

The Honorable H. Q. Sibley, D. V. M.
Executive Director
Texas Animal Health Commission
1020 Sam Houston State Office Bldg.
Austin, Texas 78701

Opinion No. H- 195

Re: The authority of the
Texas Animal Health
Commission to prohibit
the admission of Mexican
cattle. into designated
Tick Eradication Areas.

Dear Mr. Sibley:

You have asked whether the Texas Animal Health Commission has the authority under Vernon's Texas Penal Code, Article 1525c, or any other statute to forbid the introduction of legally imported Mexican cattle into designated tick eradication areas of Texas.

You have informed us that the Commission has reason to believe that Mexican cattle have developed an immunity to "Texas fever" or "splenetic fever," the disease carried by the fever tick. Even though these cattle have been rid of any ticks and show no ill effects they may carry the latent disease in their bloodstreams. If one later becomes a host to a fever tick, the tick could transmit the disease from the immune Mexican cow to non-immune Texas cattle.

Works on veterinary medicine inform us that historically "Texas fever" has been one of the most destructive diseases among cattle. At one time practically all cattle in the southern United States were affected by the disease. Pioneering research led to the discovery that the disease was caused by the development and activity of minute protoplasmic parasites, _Piroplasma bigemina_, in the blood streams of cattle. For the first time it was discovered that a disease was transmitted from one animal to another by an intermediate host or carrier, in this case the Texas fever tick or cattle fever tick,

Margaropus annulatus. Since it appears the fever tick is the only means by which the disease is naturally transmitted from animal to animal, eradication of the fever carrying ticks will cause the disease to disappear. In 1906 the United States began a campaign to eliminate the fever tick, and now the spread of the disease has been virtually eliminated in this nation. Only a few counties along the Rio Grande are under permanent quarantine because of the presence of ticks. See generally U. S. Dept. of Agriculture, Animal Diseases, pp. 310-313 (1956); Dykstra, Animal Sanitation and Disease Control, pp. 747-749 (1961).

The legislative machinery by which Texas has combatted this disease is Article 1525c, the Tick Eradication Law. It provides methods for eradicating ticks and thus controlling the disease. The proposal about which you inquire would provide another means of controlling the fever. Instead of concentrating all efforts on eliminating the carrier, the Commission is considering measures to prevent the introduction of sources of the disease in areas where the carrier tick may exist. You have informed us that testing cattle to determine whether they carry the disease is prohibitively expensive, and your inquiry involves a proposal to prevent the introduction of all Mexican cattle into a designated Tick Eradication Area. Although the Commission has no present evidence that Mexican cattle have caused infection of Texas cattle by their introduction into Tick Eradication Areas in this state, you inform us that it is likely that as many as one-half of Mexican cattle crossing from Mexico into the United States could be carriers of the disease.

The Legislature has enacted a series of statutes to combat this and other diseases of animals under the provision of the constitution permitting the passage of laws for the regulation of livestock and the protection of stock raisers. Texas Constitution, Article 16, § 23. One of the laws enacted pursuant to the constitutional provision is Article 1525c, Vernon's Texas Penal Code, the Tick Eradication Law, (to be republished as Article 7014g-1, Vernon's Texas Civil Statutes). Section 1 of that article provides in part:

> "It shall be the duty of the [Texas Animal Health Commission]. . . to eradicate the fever-carrying tick (Margaropus Annulatus) in the State

> of Texas and to protect all lands, territory,
> premises, cattle, horses, mules, jacks and
> jennets in the State of Texas from said tick and
> exposure thereto, under the provisions of this
> Act.  Said Commission shall adopt necessary rules
> and regulations, to be proclaimed by the Governor
> of the State of Texas, for carrying out the provisions
> of this Act. "

Article 1525b of the Penal Code (to be republished as Article 7014f-1, Vernon's Texas Civil Statutes) involves the control of disease among live stock. Section 1 of that article provides in part:

> "It shall be the duty of the [ Texas Animal
> Health Commission]. . . to protect all cattle,
> horses, mules, asses, sheep, goats, hogs, and
> other live stock, and all domestic animals and
> domestic fowls of this State from infection,
> contagion or exposure to the infectious, contagious
> and communicable diseases enumerated in this
> Section . . . and other similar and dissimilar
> contagious and infectious diseases of live stock
> recognized by the veterinary profession as
> infectious or contagious. . . . Said Commission
> may at its discretion whenever it is deemed
> necessary or advisable also to engage in the
> eradication and control of any disease of any
> kind or character that affects animals, live
> stock, fowls or canines regardless of whether
> said diseases are infectious, contagious or
> communicable and may establish necessary
> quarantines for said purpose... . . Said Commis-
> sion shall adopt rules and regulations to be
> proclaimed by the Governor of the State of Texas
> for the purpose of carrying out and enforcing
> the provisions of this Act. . . . No provision
> of this Act shall relate to tick eradication; "
> (emphasis added).

The proposal you suggest is designed to prevent the introduction and spread of "Texas fever" in this state. Technically it is not a tick eradication measure. Instead, it is designed to prevent disease. We find it unnecessary, therefore, to determine whether Article 1525c, the Tick Eradication Law, provides the authority for the adoption of the measures you suggest, since the proposals may be authorized under Article 1525b's grant of authority to the Commission to eradicate and control "any disease of any kind or character that affects animals".

The Commission's proposed action is clearly within the police power of the state. Rasmussen v. Idaho, 181 U.S. 198 (1901); Smith v. St. Louis & Southwestern Railway Co., 181 U.S. 248 (1901); Armstrong v. Whitten, 41 F. 2d 241 (S.D. Tex. 1930).

It is axiomatic that a state regulation cannot stand if it conflicts with a federal statute or regulation. Article 6, clause 2, of the United States Constitution, the Supremacy Clause. Also, the state may not regulate commerce in an area in which the federal government has preempted the regulatory field. Article 1, § 8, clause 3 of the United States Constitution, the Commerce Clause. In Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947), the Court said:

> "The question in each case is what the purpose of Congress was.
>
> ". . . Such a purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . . Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. . . . Or the state policy may produce a result inconsistent with the objective of the federal statute. "

After carefully examining the federal regulatory scheme it is our conclusion that Congress did not intend to preempt the field. See, Savage v. Jones, 225 U.S. 501 (1912); Reid v. Colorado, 187 U.S. 137 (1902); Missouri, Kansas & Texas Railway Co. v. Haber, 169 U.S. 613 (1898). Indeed, the Congress and the Secretary of Agriculture specifically contemplate concurrent state regulation. 21 U.S.C. § 114, 9 C.F.R. § 72.10.

21 U.S.C. § 104, authorizes the Secretary of Agriculture to permit the entry of certain Mexican cattle into the State of Texas. As it is our understanding that the proposed regulation would merely prevent their entry into designated Tick Eradication areas, we do not believe it would conflict with any specific federal statute or the general federal regulatory scheme.

A state's absolute quarantine against cattle from another state may be permissible under the commerce clause. Smith v. St. Louis & Southwest Railway Co., supra. The test to be used in determining whether a state regulation unduly affects interstate commerce is essentially a balancing test. It was recently articulated in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970) where the United States Supreme Court said:

> "Where the statute regulates even-handedly to
> effectuate a legitimate local public interest, and
> its effects on interstate commerce are only incidental,
> it will be upheld unless the burden imposed on such
> commerce is clearly excessive in relation to the
> putative local benefits. . . . If a legitimate local
> purpose is found, then the question becomes one
> of degree. And the extent of the burden that will
> be tolerated will of course depend on the nature of
> the local interest involved, and on whether it could
> be promoted as well with a lesser impact on interstate
> activities. "

The validity of the proposed regulation would depend on its scope and its effectiveness in promoting the health of cattle in this state. The only regulation that has been suggested to us is in a very general outline form, and without more specific information as to its scope, we are not able to

render any judgment on its legal validity in respect to the commerce clause. The soundness of the veterinary theory on which it is based would be a relevant consideration in determining the regulation's validity, but we are not equipped to make such factual determinations. We can say, however, that regulations of the type you have outlined would not necessarily be precluded by the federal government's power over interstate and foreign commerce.

<u>SUMMARY</u>

The Texas Animal Health Commission has the authority to prohibit the admission of Mexican cattle into designated Tick Eradication Areas in an attempt to prevent the introduction and spread of splenetic or Texas fever. Such a regulation would not necessarily be precluded by the federal government's power over commerce.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee